IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Action No. 05-cv-00296-LTB-PAC

ELIZABETH VALENCIA,
          Plaintiff,

v.

The GEO GROUP, INC., a Florida corporation, f/k/a Wackenhut Corrections Corporation,
          Defendant.

_____

Order on Motions
_____

Plaintiff Elizabeth Valencia ("Valencia") brings federal anti-discrimination and state law tort claims against defendant The GEO Group ("GEO"). GEO moves to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, GEO's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Valencia is an Hispanic female who worked as a kitchen supervisor from September 1999 to July 2003 at a detention facility in Aurora, Colorado operated by GEO, at the time known as the Wackenhut Corrections Corporation ("Wackenhut"). The facility provides housing to illegal aliens awaiting administrative hearings relating to their deportation. Valenica was 45 years old when she was hired.

Valencia asserts that starting in June of 2000, when Kim Washington, an African American female, became her supervisor, she began experiencing discrimination at her job. She alleges that between September of 2002 and July of 2003, Wackenhut made the following false accusations against her: that she improperly gave T-shirts to detainees, that she improperly

allowed detainees to cook in the kitchen, that she was insubordinate to Ms. Washington, that she improperly asked detainees to write letters supporting her in her dispute with Wackenhut, and that she improperly requested medical leave.

On June 30, 2003 Valenica states that she filed a complaint against Ms. Washington for her "abusive conduct" towards Valencia. Valencia does not state with whom this complaint was filed. Valencia also states that at some point prior to her termination she advised someone in her management that she was aware that Wackenhut was violating federal regulations governing the food portions to be served to detainees, and threatened to inform the Immigration and Naturalization Service ("INS) of this alleged violation. Valencia was fired August 15, 2003 and alleges that she was replaced by a younger African-American male.

Valencia filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on February 13, 2004 alleging discrimination based on age, retaliation and national origin. The EEOC declined to pursue these charges, and issued Valencia a "right to sue" letter on November 18, 2004. Valencia filed her complaint in federal court on February 16, 2005, making federal claims of discrimination based on sexual harassment (Claim 1), age discrimination (Claim 2), and retaliation (Claim 3); and state law claims based on wrongful termination/violation of public policy (Claim 4), negligent infliction of emotional distress (Claim 5) and intentional infliction of emotional distress (Claim 6). GEO moves to dismiss Valencia's sexual harassment claim for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and all other claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Valencia has dropped her claim for sexual harassment, so this Order only addresses GEO's motion to dismiss Valencia's Claims 2 - 6.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

One must read Fed. R. Civ. P. 12(b)(6) in conjunction with Fed. R. Civ. P 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." These requirements are de minimus. *United Steelworkers of America v. Oregon Steel Mills, Inc.* 322 F.3d 1222, 1228 (10th Cir. 2003). The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley* at 47. A plaintiff is not required to state precisely each element of the claim. *See* 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154-59 (1990). A plaintiff is not required to plead legal theories, only legal claims. *Vidmos, Inc. v. Laser Lab Ltd.,* 99 F.3d 217, 222 (7th Cir. 1996). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

### III.  DISCUSSION

A.  <u>Age Discrimination</u>

GEO moves to dismiss Valencia's age discrimination claim on two distinct grounds. First, GEO argues that Valencia's complaint incorrectly asserted an age discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), when Title VII does not address age discrimination. 42 U.S.C. § 2000e-2(a)(1).  GEO argues that Valencia should have asserted this claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* While Valencia did properly assert this claim in her response brief, GEO contends this was filed more than 90 days after Valenica received her right to sue letter and is thus barred by the ADEA's statute of limitations provision.  29 U.S.C. § 626(e).

This argument misconstrues the burden on Valencia under Fed. R. Civ. P. 8(a). There is no question that Valencia's complaint puts GEO on notice that she is claiming age discrimination. Accordingly, Valencia's complaint is not fatally flawed merely because it cited to an incorrect statute. "A plaintiff should not be prevented from pursuing a claim simply because of a failure to set forth in the complaint a theory on which plaintiff could recover, provided that a late shift in the theory of the case will not prejudice the other party in maintaining its defense. *Green Country Food Market, Inc. v. Bottling Group*, *LLC,* 371 F.3d 1275, 1279 (10th Cir. 2004).

Valencia's error, corrected in a later brief, was not a "late shift" in the case, since GEO was aware from the complaint itself that it was accused of age discrimination. Similarly, GEO was not surprised or prejudiced by Valencia's amendment of her claim to cite to the ADEA rather than to Title VII. Since GEO had notice of the age discrimination claim from the outset of the case there is no basis under the rules to dismiss the complaint for failure to state a claim. Since

Valencia's complaint sufficiently raised a claim of age discrimination, it falls within the ADEA's 90 day filing deadline. GEO's motion to dismiss on this point fails.

GEO next argues that even if Valencia's claim is timely, she has not alleged facts sufficient to show that her work was satisfactory at the time she was fired, an essential element in a prima facie case for age discrimination. GEO is correct that a plaintiff must allege facts showing that her work was satisfactory prior to termination in order to make a prima facie case for age discrimination. *Rivera v. City and County of Denver,* 365 F.3d 912, 920 (10th Cir. 2004). However, GEO's argument founders for two reasons. First, in the Tenth Circuit this prong of the prima facie case can be established several ways, including by a plaintiff's "own testimony that her work was satisfactory," and "by evidence that she held her position for a significant period of time." *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121 (10th Cir. 1991). Valencia, according to her complaint, worked for GEO for almost five years, and states that she "was not terminated due to her work performance." This is sufficient to satisfy this prong of the test.

Second, it is legally irrelevant whether Valencia's complaint satisfies the prima facie case for age discrimination, because the Supreme Court has ruled that "an employment discrimination plaintiff need not plead a prima facie case of discrimination." *Swierkiewicz v. Soreman,* 534 U.S. 506, 515 (2002). "Under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." *Id.* at 511.  The cases GEO cites addressed challenges to motions for summary judgment,  *Rivera,* 365 F.3d at 920, *Ellis v. United Airlines,* 73 F.3d 999 (10th Cir. 1996) and *Jones v. Unisys Corporation,* 54 F.3d 630 (10th Cir. 1995); or a challenge to jury instructions, *Faulkner v. SuperValu Stores, Inc.,* 3 F.3d 1419 (10th Cir. 1993). None

involved a challenge to a Rule 12(b)(6) motion to dismiss.

GEO's motion to dismiss Valencia's claim for age discrimination therefore fails.

B.   Retaliation

GEO argues that Valencia's third claim fails to state a claim for retaliation. Both Title VII and the ADEA protect employees against retaliation for engaging in actions protected under those statutes. 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 623(d). Valencia asserts that she was retaliated against by Wackenhut for "filing a complaint against her supervisor" for the supervisor's "abusive conduct." Valencia also states that Wackenhut took action that led to her "wrongful termination" after she informed them that she might notify the INS about alleged violations of federal regulations.

A retaliation claim under ADEA and Title VII consists of three elements: (1) that the plaintiff engaged in an activity protected under the statute; (2) that the plaintiff suffered an adverse employment action after engaging in the protected activity; and (3) that there is some causal connection between the protected activity and the adverse employment action. *Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1215 (10th Cir. 1998) (analyzing retaliation under Title VII); *Corneveaux v. CUNA Mutual Insurance Group,* 76 F.3d 1498, 1507 (10th Cir. 1996) (analyzing retaliation under the ADEA).

GEO contends that Valencia's complaint fails to allege facts sufficient to support either the first or third elements of the prima facie case. GEO asserts that a violation of a federal regulation for treating inmates is not an activity protected under Title VII or ADEA, and that Valencia does not allege that she complained about any alleged violations of Title VII or the ADEA, so Valencia has not alleged a complaint that is covered by these statutes. GEO also

argues that Valenica does not state when she made her complaint, so she fails to show the kind of proximity in time necessary to meet the causation prong of the prima facie case.

GEO again mistakes a prima facie case for a pleading burden. Valencia only has to make a plain statement of her claim that gives GEO "fair notice" of the nature of the claim. Her complaint does not have to satisfy the elements of a prima facie case. *Swierkiewicz,* 534 U.S. at 515. Valencia's complaint states clearly that she is alleging retaliation. Her complaint alleges that she faced "abusive conduct" from her supervisor, that she filed a complaint against her supervisor, and she later was subject to discipline for filing the complaint. While these factual allegations are thin, I cannot say that it is "beyond doubt" that Valencia can prove "no set of facts" to support this claim. *Conley,* 335 U.S. at 45-46. The authority GEO cites all involve motions for summary judgment or, in one case, an appeal of a judgement as a matter of law. None support the proposition that a plaintiff must satisfy the elements of a *prima facie* case in a complaint to overcome a 12(b)(6) motion to dismiss.

GEO also argues that Valencia's retaliation claim is time-barred because she raised age retaliation in her original complaint under Title VII, not the ADEA. I have already determined that her age discrimination claim falls within the statutory deadline even though she incorrectly asserted it as a Title VII claim rather than as an ADEA claim. I similarly conclude that her retaliation claim, although stated incorrectly as a Title VII claim, is sufficient to place GEO on notice of the nature of her claim and thus satisfies the requirements of Fed. R. Civ. P. 8(a).

C.   Wrongful Termination in Violation of Public Policy

Valencia's fourth claim for relief is for wrongful termination in violation of public policy. Valencia alleges in her complaint that she believed that Wackenhut was violating federal

regulations regarding the food portions it served to detainees, and that Wackenhut terminated her in retaliation for her threat to report them to the INS. GEO argues that these allegations fail to state a claim for wrongful termination in violation of public policy.

Colorado recognizes a cause of action for wrongful termination in violation of public policy as an exception to the general rule of at-will employment. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 108 (Colo. 1992). The Colorado Supreme Court has stated that an employee establishes a case for wrongful discharge under this exception when he shows evidence that:

> "[t]he employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; that the employee was terminated as the result of refusing to perform the act directed by the employer. . . [and] that the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

*Id.* at 109.

GEO presents several reasons to dismiss this claim. I find none of them persuasive. First, while GEO asserts, correctly, that Valencia has not stated the specific statute or regulation Wackenhut is alleged to have violated, this is unnecessary. Valencia's contention that Wackenhut violated an INS regulation regarding food portions served to detainees is sufficient to give GEO "fair notice" of her claim.

Second, GEO argues that Valenica's claim is outside of the scope of the public policy

8

exception. GEO points out that Valencia was not fired for refusing GEO's direction to perform some illegal act. In addition, GEO contends that reporting a violation to the INS is not a public duty like jury duty, citing *Nees v. Hocks,* 272 Or. 210 (Or. 1975), or a job related right or privilege like filing a workers compensation claim, citing *Lathrop v. Entemann's Inc.,* 770 P.2d 1367, 1372-73 (Colo. Ct. App. 1989) and does not truly impact the public, citing *Crawford Rehabilitation Services v. Weissman,* 938 P.2d 540, 552-553 (Colo. 1997).

GEO mis-states the scope of the public policy doctrine. A public policy violation claim does not require explicit employer direction to the employee to violate a law or regulation. It can also be satisfied by an employee's reporting of a violation to a regulatory agency. *Martin Marietta,* 823 P.2d at 111 [*citing Harless v First National Bank in Fairmont,* 162 S.E.2d 116, 125-126 (W.Va. 1978)]. A public policy duty covered by this exception can include violating a federal or state statute, *Martin Marietta,* 823 P.2d at 111, or employee "whistle-blowing," like what Valencia alleges here. *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 667 n.2 (Colo 1999)(en banc). *Crawford* is not dispositive, because the Court there found that an employee asserting her own right to take breaks did not qualify as a public policy claim, *Crawford,* 938 P.2d at 552-553, while here Valencia asserts that GEO violated a statute or regulation that governs food portions to detainees. While GEO may believe that Valencia's claim is more like the claim rejected in *Crawford* than those accepted in *Lathrop* or *Martin Marietta,* the degree to which an alleged violation of a statute violates public policy cannot be resolved in a motion to dismiss.

Finally, GEO argues that Valencia cannot assert this claim because she does not allege that she was personally required to monitor or serve the allegedly deficient food portions, and because she only threatened to notify the INS but did not actually do so. GEO asserts no specific authority

to support these statements, and at this stage of the proceeding I decline to dismiss this claim on such a thin basis. Valencia has stated the elements of this claim sufficiently to defeat a motion to dismiss.

D. <u>Negligent Infliction of Emotional Distress</u>

Valencia claims, without much elaboration, that GEO's treatment of her was negligent, subjected her to unreasonable risk of bodily harm and caused her emotional injury. GEO argues that Valencia fails to state a claim for negligent infliction of emotional distress because her complaint does not allege physical injury and does not place her in the "zone of danger," citing *Atsepovi v. Tander Corporation*, 51 F. Supp.2d 1120, 1127 (D. Colo. 1999) [citing *Culpepper v. Pearl St. Bldg. Inc.,* 877 P.2d 877, 880 (Colo. 1994)].

In Colorado a plaintiff can state a claim for negligent infliction of emotional distress even without alleging physical injury if "the defendant created an unreasonable risk of bodily injury to the plaintiff, and the plaintiff suffered emotional distress which resulted in serious physical manifestations or mental illness." *Culpepper*, 877 P.2d at 880. Colorado has adopted the position of the Restatement (Second) of Torts, s 436(A) (1965) on the degree of physical injury necessary to sustain a claim of negligent infliction of emotional distress. *Towns v Anderson,* 579 P.2d 1163, 1164 (Colo. 1978). Absent direct physical harm to the plaintiff, emotional disturbance alone is insufficient to ground an intentional infliction of emotional distress claim. *Id.* However, "[L]ong continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks or mental aberration, may be classified by the courts as illness, notwithstanding their mental character." *Id.* at 1165. [*citing* Restatement (Second) of Torts § 436(A) cmt. c (1965)]. So,

10

"where the emotional distress has thus manifested itself in some form of physical or mental illness," a claim for negligent infliction of emotional distress may lie. *Id.*

Valencia here does not claim any specific physical injury, either directly or as a secondary manifestation of an emotional injury. She claims only "emotional injury." This is insufficient to make out a claim for negligent infliction of emotional distress in Colorado. GEO's motion to dismiss this claim is therefore granted.

E   Intentional Infliction of Emotional Distress.

Valencia's sixth claim is for intentional infliction of emotional distress. The elements of this tort are "(1) the defendant(s) engag[ing] in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Archer v. Farmer Bros. Co.,* 70 P.3d 495, 499 (Colo. Ct. App. 2002). The level of outrageousness necessary to satisfy the first element is "extremely high." *Id.* "Mere insults, indignities, threats, annoyances, petty oppressions or other trivialities are insufficient" to be outrageous. *Id.* Extreme and outrageous conduct is only that conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community."*Id.*

Although the question of whether conduct is outrageous is generally a fact question to be decided by a jury, the trial court must address the "threshold issue" of whether the conduct is sufficiently outrageous as a matter of law. *Coors,* 978 P.2d at 665. A claim should be dismissed if "reasonable people could not differ" on whether the defendant's behavior was outrageous. *Id.* at 666.

Valencia here claims that GEO fired her in retaliation for threatening to inform the INS of

alleged unlawful practices by Wackenhut, and that Wackenhut made numerous false statements and accusations against her as a pretext for firing her. These allegations do not constitute outrageous behavior. Getting fired from a job, even for discriminatory reasons, is not outrageous conduct. *Grandchamp v. United Airlines, Inc.,* 854 F.2d 381, 386 (10th Cir. 1988). Claims for outrageous conduct usually require more, such as a firing coupled with a physical assault, *Kirk v. Smith,* 674 F. Supp. 803 (D. Colo. 1987), or a firing combined with allegations that the plaintiff was sexually harassed, ridiculed, threatened and humiliated. *Wing v. JMB Property Management Corp.,* 714 P.2d 916, 918 (Colo. Ct. App. 1987).

GEO's alleged conduct towards Valencia does not meet this high threshold. Valencia alleges only that she was fired in retaliation for threatening to blow the whistle on GEO, after a series of false accusations about her job performance and behavior. This is similar to the situation facing the plaintiff in *Coors,* who alleged he was falsely accused of "improprieties with a female employee, failure to account for company funds and misuse of company funds." *Coors*, 978 P.2d at 665.  Even under the lenient standard of a motion to dismiss, these allegations failed to state a claim for intentional infliction of emotional distress. *Id.* at 666.

I therefore find and conclude that reasonable people cannot differ on whether GEO's alleged conduct towards Valenica was outrageous. Valencia has failed to state a claim for intentional infliction of emotional distress.

Because I dismiss Valencia's claims of negligent infliction of emotional distress and intentional infliction of emotional distress for failure to state a claim, I do not consider GEO's argument, raised for the first time in its reply brief, that the Colorado Workers Compensation Act, C.R.S. § 8-42-102,  bars this Court from exercising subject matter jurisdiction over these claims. I

note that GEO's motion to dismiss did not argue that this Court lacked jurisdiction over these claims, and so Valencia did not have the opportunity to respond to this argument.

Therefore it is so Ordered that:

1) Defendant's motion to dismiss is GRANTED as to plaintiff's claim for sexual harassment,

2) Defendant's motion to dismiss is DENIED as to plaintiff's claim for age discrimination, and

3) Defendant's motion to dismiss is DENIED as to plaintiff's claim for retaliation,

4) Defendant's motion to dismiss is DENIED as to plaintiff's claim for wrongful termination,

5) Defendant's motion to dismiss is GRANTED as to plaintiff's claim for negligent infliction of emotional distress, and

6) Defendant's motion to dismiss is GRANTED as to plaintiff's claim for intentional infliction of emotional distress.

DONE and ORDERED, this __13th__ day of December, 2005 at Denver, Colorado.

                                            s/Lewis T. Babcock
                                            LEWIS T. BABCOCK
                                            United States District Chief Judge