**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Action No. 05-cv-00296-LTB-PAC

ELIZABETH VALENCIA,

      Plaintiff,

v.

The GEO GROUP, INC., a Florida corporation, f/k/a Wackenhut Corrections Corporation,

      Defendant.

---

## Order

---

Defendant The GEO Group, Inc., ("GEO") seeks summary judgment on claims by plaintiff Elizabeth Valencia ("Valencia") for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* retaliation in violation of the ADEA and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and wrongful termination. For the reasons stated below GEO's motion is GRANTED in part, and DENIED, without prejudice in part.

## I.  BACKGROUND

This case concerns the employment relationship of Valencia and GEO. Valencia claims she was fired because of her age, in retaliation for her complaints against her management and in violation of public policy. Valencia also claims she was denied promotion because of her age and national origin. GEO contends that it fired Valencia because of her behavior and performance issues.  As noted later, Valencia filed no response to GEO's motion. So, the facts of the case, as recounted by GEO and supported by the documents it provides in its motion, are as follows.

GEO operates a detention facility in Aurora, Colorado under contract with the United States Immigration and Customs Enforcement ("ICE") to detain illegal aliens awaiting administrative hearings. Valencia is an Hispanic-American female who worked as a kitchen supervisor at this facility from September 1998 until GEO fired her on August 15, 2003. Her date of birth is July 5, 1958.

GEO recounts a lengthy history of conduct and performance issues with Valencia. In November 1999 Valencia received oral counseling from D.P. Lyons, then Warden of the Aurora facility, for bringing fish and other sea food items into the facility for the inmates. Lyons states in his Memorandum for the Record that bringing food to the detainees is prohibited, and that Valencia stated that she was aware of this. Lyons states that he informed Valencia that if she brings contraband into the facility again it would be grounds for further disciplinary action, including termination. While GEO provides the affidavit of Jerry Alexander, the warden of the facility from June 16, 2003 to January 10, 2006, that food was a prohibited contraband item and all employees knew this, Alexander did not work at the facility at the time of this event, and GEO has not provided any written policy that addresses contraband. Valencia states that she did not know, at the time, that food was prohibited contraband.

In 2000 and 2001, Valencia was verbally counseled four times for being tardy to work, using inappropriate language and tone with facility staff and inmates, and for behaving unprofessionally. On April 13, 2002 GEO suspended Valencia from June 10-12, 2002 for allowing the detainees under her supervision to cook and eat food that was not on the menu. According to GEO, this violated the procedures of GEO and the specific orders of Valencia's supervisor. On January 6, 2003 Kim Washington, Valencia's supervisor, verbally counseled

2

Valencia for raising her voice to Washington and "becoming borderline insubordinate." On June 11, 2003, Washington submitted a report to Charles Warden, the Assistant Warden of Operations, summarizing various issues with Valencia's conduct, and recounting these and other instances when Valencia had been disciplined or warned about her behavior from May 2, 2003 through June 10, 2003.

GEO contends that several specific events in May and June 2003 were the immediate triggering events of Valencia's termination. In early June GEO officials noticed that some white "Trustee" t-shirts were missing. GEO investigated, and concluded that Valencia was responsible for issuing these shirts in violation of GEO policies. The investigation also found that Valencia had lied about her actions and behaved insubordinately to her supervisor when she questioned Valencia. On or about June 11, 2003 Valencia asked several detainees to write letters on Valencia's behalf.  Valencia collected these letters and gave them to Barbara Krumpelmann, the Assistant Warden for Support Services. GEO investigated this event, and concluded that Valencia had violated several GEO policies in requesting these letters. On June 12, 2003 Valencia requested leave from June 12-16, 2003. According to GEO, she did not clear this request with her supervisor. GEO concluded that this violated two GEO policies.

Based on these events, and on Valencia's prior violations of GEO policies, Jerry Alexander, on July 10, 2003 placed Valencia on administrative leave with pay and informed Valencia he was recommending her termination. The Regional Director approved the termination July 17, 2003 and the Regional Vice-President approved it on July 22, 2003. Valencia's termination was effective August 15, 2003. Valencia contests all of the items Alexander cited, stating either that she did not commit the acts listed or that the acts were not in violation of GEO

policy. Valencia also claims that these ongoing false charges against her constitute "severe and pervasive harassment."

During her time at GEO, Valencia filed several complaints against her supervisor, Washington, but did not file a complaint with the Equal Employment Opportunity Commission ("EEOC") until after she was terminated. Valencia filed an internal complaint June 3, 2003 stating that Washington treated Valencia "poorly and disrespectfully," and wrote "I want this harassment to stop."   Valencia explained that she was referring to Washington's "yelling" at her and "picking at me." On June 10, 2003 Valencia filed another internal complaint stating that Washington "yelled" at her when Washington was questioning her about the missing t-shirts. The complaint also describes an incident June 10, 2003 when Washington asked Valencia about issues between Valencia and a security guard. Valencia stated that she was "tired of being called into her office every day" and that she felt she was "being picked on by her."

On June 17, 2003 Valencia filed a complaint against Washington for opening mail addressed to her marked "confidential." Washington admitted opening the letter, but stated that it was accidental. Washington's supervisor, Krumpelmann, investigated this incident and concluded that Washington had opened the mail by mistake, not deliberately. Warden Alexander upheld this decision on June 25, 2003, and Ed Brown, Regional Director upheld this decision as well. Valencia, on August 14, 2003, wrote to Michael Kraus, GEO's Group Director of Compliance and Staffing, about this incident, and at the end of the letter referred to numerous "wrongdoings" she had witnessed at the facility, including serving meat portions smaller than those specified on the menu, and suggesting that inmates were receiving less than the necessary number of calories per day.  Valencia states that she told Washington about two months after her suspension in June

4

of 2002 that she would report GEO to the INS (Immigration and Naturalization Service, predecessor to ICE) about the issue of too small food portions. In fact, she never did.

On two occasions, in September of 2002 and April of 2003, Valencia applied for positions as a detention officer. She was denied both times and alleges that GEO hired predominantly applicants under 30.

On or about February 13, 2004, after she was terminated, Valencia filed a charge with the EEOC claiming she was terminated based on age and national origin, and in retaliation for complaining about the food portions and for threatening to report GEO to the INS. She also alleged she was not promoted based on age and national origin and subject to harassment. On February 16, 2005 Valencia filed this complaint making claims for sexual harassment, age discrimination, retaliation, intentional infliction of emotional distress, negligent infliction of emotional distress and wrongful termination in violation of public policy. On December 13, 2005 I dismissed Valencia's claims for sexual harassment, negligent infliction of emotional distress and intentional infliction of emotional distress under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. This Order addresses GEO's motion for summary judgment on the remaining claims.

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Once a properly supported summary judgment motion is made, the opposing party must provide specific facts showing the existence of a genuine factual issue to be tried.

*Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986). Where the non-moving party has the burden of persuasion at trial, the moving party can discharge its burden by showing that "there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325.

In this case, GEO filed its summary judgment motion June 16, 2006, and Valencia did not respond within 20 days, as required by D.C.COLO.LCivR 7.1(c), or request additional time from the court. I therefore consider GEO's motion absent any response from Valencia.

When the non-moving party fails to respond to a motion for summary judgment, the moving party is not automatically entitled to summary judgment. *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002). The District Court must first review the movant's evidence "to determine if it has met its initial burden to show that no material issues of fact remain for trial." *Id.* By failing to file a timely response, the non-moving party waives the right to respond or to rebut the facts offered and properly supported by the movant. *Id.* But I grant summary judgment only if those facts entitle the movant to judgment as a matter of law. *Id.*

### III.  DISCUSSION

A.    Age Discrimination

Valencia claims in her complaint that she was fired and denied promotion due to her age. She also claims that she was subject to harassment. While her complaint describes this harassment

as a Title VII violation, her complaint only makes a claim for relief under the ADEA. I therefore

will construe this claim to be for harassment actionable under the ADEA. In its motion for

summary judgment, GEO does not address Valencia's claims of harassment or of failure to

promote.

Age discrimination claims under the ADEA follow the burden shifting framework

established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See also Miller v. Eby*

*Realty Group LLC,* 396 F.3d 1105, 1111 (10th Cir. 2005). Under this framework, the plaintiff

bears the initial burden of establishing a prima facie case of discrimination. *Id.* A plaintiff makes

this case by showing that she was 1) within the age group protected by the ADEA, 2) performing

her job satisfactorily, 3) subject to an adverse job action and 4) replaced by a younger person. *Id.*

The defendant then bears the burden of producing a "legitimate, non discriminatory reason"

for this employment decision. *Id.* If the defendant is able to articulate a valid reason, the plaintiff

has the opportunity to prove that the defendant's stated reason was "merely a pretext for unlawful

discrimination."*Id.*

In this case, GEO appears to acknowledge, at least for the purposes of this motion, that

Valencia has met her burden to establish a *prima facie* case. Valencia was over forty when she was

fired. While GEO does not concede that Valencia was doing her job satisfactorily, in the Tenth

Circuit an employer's argument of poor job performance is properly made at the second step in

this process, offering a legitimate reason for termination, not at the stage of contesting a *prima*

*facie* case. *See Orr v. City of Albuquerque,* 417 F.3d 1144, 1151-1152 (10th Cir. 2005). *See also*

*E.E.O.C. v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1193 (10th Cir. 2000).

To rebut Valencia's *prima facie* case, GEO must only show that it had some reason to fire

7

Valencia that did not facially violate the ADEA. *Jones v. Barnhart,* 349 F.3d 1260, 1266 (10th Cir. 2003). GEO asserts that it terminated Valencia because of her "insubordination, conduct unbecoming a trustworthy employee, and fostering a rebellious and unprofessional conduct." The letter refers to numerous violations of company policy and numerous prior warnings and disciplinary actions, including a three day suspension.  This satisfies GEO's burden.

The burden then shifts to Valencia to show that GEO's stated reason is pretext for discrimination.  Pretext can be shown by "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). "Mere conjecture that the employer's explanation is pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.*   "Even though all doubts concerning pretext must be resolved in the plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgement." *Id.* at 1324.

To demonstrate that the employer's proffered reason is pretext, the plaintiff does not have to prove that the employer acted illegally or in a discriminatory fashion. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995). "[D]iscriminatory animus may be inferred from the simple showing of pretext." *Id.* Accordingly, a plaintiff can defeat a motion for summary judgment solely by establishing a prima facie case and showing pretext.  *Id.*

The record here does not show any evidence of pretext. Valencia states that she believes she was suspended because of her age, but the sole fact she recites in support of this statement is that Washington was younger than she was. This is the kind of "mere conjecture" that does not

8

defeat a motion for summary judgment. Valencia even concedes that she does not know if Washington mistreated her because she was over forty. She also does not know if Washington treated younger people differently than the way she treated Valencia.

While Valencia contests, but without evidentiary support, many of the facts surrounding the disciplinary actions taken against her, this is insufficient under Rule 56 to show pretext. GEO's reasons for firing Valencia do not need to be "wise, fair or correct," as long as GEO honestly believed them and acted on them in good faith. *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002). Here, there is no evidence in the record to show that GEO did not believe in good faith that Valencia committed the acts GEO described and that it did not believe she violated company policy. Moreover, the record does not contain evidence of inconsistencies in GEO's stated reasons for firing Valencia. Absent evidence of pretext, GEO is entitled to summary judgment on the claim of age discrimination in relation to her termination.

However, as noted above, GEO does not address Valencia's claims regarding failure to promote or harassment under the ADEA. These claims are stated in Valencia's complaint and were not dismissed in my December 13, 2005 Order. They remain open claims in this case.

B.     Retaliation

Valencia claims that she was subject to retaliation for her complaints against Washington and against GEO in violation of Title VII and the ADEA. Under Title VII, claims for retaliation are subject to the burden-shifting framework of *McDonnell Douglas*.  First, a plaintiff must establish a *prima facie* case of retaliation. This consists of three elements: a plaintiff must show she engaged in some activity in opposition to discrimination that is protected under Title VII,  that she

suffered an adverse job action, and that there is some causal relationship between the protected activity and the adverse job action. *Medina v. Income Support Division, State of New Mexico,* 413 F.3d 1131, 1135-1136 (10th Cir. 2005). After establishing a *prima facie case*, the burden then shifts to the employer to show that it had a legitimate, non-discriminatory reason for taking the adverse employment action. *Id.* The burden then shifts back to the plaintiff to show that the plaintiff's proffered reason is pretextual. *Id.* This same framework applies to claims for retaliation under the ADEA. *Anderson v. Phillips Petroleum Inc.,* 861 F.2d 631, 634 (10th Cir. 1988).

GEO contends that Valencia's claim fails because she did not engage in activity protected under the ADEA or Title VII. Valencia's complaints about Washington concern allegations that Washington opened her mail, treated her disrespectfully, falsely accused her of distributing t-shirts, and inquired about conflicts with a security guard. Valencia also states that she told Washington she would file charges with the INS about the small food portions. These complaints may show that Valencia felt "harassed" by Washington, but they do not allege discrimination based on age, race or national origin. Valencia herself states that she does not know if Washington's behavior towards her was motivated by her age or her Hispanic origin. Similarly, Valencia's complaint to Kraus on August 14, 2003 describes Valencia's issues with Washington, inmates being served too small meat portions, and refers generally to numerous wrongdoings. None of these complaints implicate ADEA or Title VII. Valencia has not provided any evidence that she engaged in activity protected by these statutes, and has therefore failed to make out a *prima facie* claim for retaliation.

Valencia's claim for retaliation also fails because I found no evidence of pretext, as discussed above.

C.      Wrongful Termination in Violation of Public Policy

Valencia claims she was fired in violation of public policy. The Colorado Supreme Court recognizes a cause of action for wrongful termination in violation of public policy as an exception to the general rule of at-will employment. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 108 (Colo. 1992). To establish wrongful discharge under this exception an employee must show that (1) her employer directed her to perform an act as part of her duties, that (2) violated a statute or clearly expressed public policy, (3) she was fired for refusing to perform this act and (4) her employer knew or should have known that she refused to do the act because she reasonably believed it was illegal. *Rocky Mountain Hosp. and Medical Service v. Mariani*, 916 P.2d 519, 527 (Colo. 1996).

This exception exists in order to prevent an employer from firing an employee "for reasons that contravene widely accepted and substantial public policies." *Crawford Rehabilitation Services, Inc. v. Weissman,* 938 P.2d 540, 552 (Colo. 1997). To fall under this exception, the policy at issue must involve "a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff." *Id.* The public policy "must concern behavior that truly impacts the public in order to justify interference into an employer's business decisions." *Id.*

GEO argues that Valencia's claim does not meet two prongs of the test for wrongful discharge. First, although Valencia claims that she threatened to inform the INS that the meat portions GEO served to inmates violated INS rules, the record contains no INS rule or regulation that GEO violated. Valencia herself states in her deposition that she is unaware of any Government regulation addressing the portions of meat GEO must serve inmates. She believed  that small meat portions were a violation when they were less than the portions specified in the GEO menu. While a violation of a specific INS/ICE regulation governing food portions might qualify as a public

11

policy under this doctrine, no evidence exists that such a regulation exists. The GEO menu, by itself, does not qualify as such a policy. So, even assuming GEO served food portions inconsistent with its own menu (which GEO denies) this does not constitute a public policy violation sufficient to invoke this exception.

GEO also contends that it did not fire Valencia for reporting about food portions, but because of the other documented conduct issues and violations of GEO policies, including the distribution of t-shirts, requesting in-mates to write letters on her behalf, failure to follow GEO policy in requesting leave and insubordinate behavior towards her supervisor. Valencia provides no material issue of fact showing she was fired because of her protests, orally to Washington or in writing to Kraus on August 14, 2003, about the food portions. Moreover, Alexander's letter to Valencia informing her that he was recommending her termination was dated July 10, 2003, more than a month prior to Valencia's letter to Kraus. While it is possible that Valencia's statement to Washington that Valencia intended to report GEO to the INS wound its way through the GEO system and somehow influenced Alexander's decision, Valencia has provided no evidence to support this theory, and GEO has shown that it had viable other reasons to terminate Valencia. Under these facts, Valencia has not presented a fact in dispute to defeat summary judgment on wrongful termination.

Therefore, it is so Ordered that:

GEO's motion for summary judgment (Docket # 28) is GRANTED in part, and DENIED, in part as follows:

1) GEO's motion for summary judgment is GRANTED as to Valencia's claim that she was terminated in violation of the ADEA,

2) GEO's motion for summary judgment is GRANTED as to Valencia's claim for retaliation in violation of the ADEA and TITLE VII,

3) GEO's motion for summary judgment is GRANTED as to Valencia's claim for wrongful termination.

4) GEO's motion for summary judgment is DENIED without prejudice as to Valencia's remaining claims for failure to promote and harassment under the ADEA.

DONE and ORDERED, this ___7th___ day of September, 2006 at Denver, Colorado.

                              ___s/Lewis T. Babcock_____
                              United States District Chief Judge